Merrimack, }
Oct. 7, 1903. }

WILDER v. CONCORD.

Under chapter 59, Laws 1893, a town is not liable to a highway traveler who is injured by falling into a trench dug across a sidewalk by an adjoining landowner, unless it has been given express notice of the defect in the manner provided by statute and has not begun to repair.

CASE, for negligence. Transferred from the October term, 1902, of the superior court by *Wallace*, C. J. Upon the opening statement made by counsel for the plaintiff a nonsuit was ordered, subject to exception.

The material facts stated were as follows: At about half past six in the evening of October 16, 1901, the plaintiff while walking along a sidewalk on Spring street, a legal highway in Concord, without fault on her part, fell into an open trench dug across the sidewalk, and was injured. In Spring street there is a public sewer with which the house of Frank Lassond is connected by a private drain or sewer of Akron pipe. There being some trouble with the private drain, Lassond, or some person in his employ, uncovered from four to six feet of it across the traveled part of the sidewalk to a depth of from one and a half to two and a half feet, and about four o'clock on the afternoon of the day of the accident left the trench uncovered, unguarded, and unlighted. Whether the defendants ought to have known of and remedied the defect before the accident was controverted upon the facts stated; but as the question was not considered, these facts are omitted.

*Willis G. Buxton* and *David F. Dudley*, for the plaintiff.

*Edmund S. Cook* and *Martin & Howe*, for the defendants.

PARSONS, C. J. Although the action is stated in the record to be "case for negligence," no claim has been made that recovery could be had except under the statute establishing the liability of towns to travelers injured through the unsuitable condition of the highway. Laws 1893, c. 59. The only question considered, therefore, has been whether the facts stated bring the case within the statute.

The duty imposed upon towns by chapter 75, Public Statutes, enforceable by indictment as therein provided, to keep all highways within their limits suitable for the travel thereon, was not affected by the legislation of 1893. The liability at the private

suit of a traveler for damages happening to him by reason of the unsuitability of the highway, as established by sections 1 and 2, chapter 7ϑ, Public Statutes, was abolished by the express repeal of those sections. Laws 1893, c. 59, s. 5. In case of express notice to the town of insufficiency in any highway, in the manner provided in section 2, chapter 59, Laws 1893, towns were made liable for all accidents happening at the place or places to which the notice related, subsequent to the notice, until repair should be commenced. So far, the statute is an expression of the legislative view that as a matter of public policy towns ought not to be held liable at the private suit of travelers injured through the defect or insufficiency of a highway, except in case of express notice to the town of the unsafe condition causing the injury. This was a return to the policy of the early provincial act of 5 Geo. I (1719). Prov. Laws, ed. 1726, p. 151. The requirement of express notice in a particular manner was omitted from the act of February 27, 1786 (Laws, ed. 1797, p. 313), and was not contained in the law until revived in 1893.

In addition to these remedies, provision was also made for a right of private action in some cases. In the present case the notice required by section 2, chapter 59, Laws 1893, had not been given. The primary question therefore is, not whether the defect complained of is one which the town in the performance of its statutory duty of highway maintenance ought to have discovered and remedied before the injury, but is whether the defect complained of is one for which a right of action is given by the statute. The danger to the traveling public from the defect, and the ease by which it might have been discovered and protection furnished, are not material unless the defect is within the statute. In other words, fault of the town, however gross, is not of itself foundation for an action. *Sargent* v. *Gilford*, 66 N. H. 543.

The material part of the statute upon which the plaintiff relies is as follows: "Towns are liable for damages happening to any person, his team or carriage, traveling upon a bridge, culvert, or sluiceway, or dangerous embankments and defective railings, upon any highway, by reason of any obstruction, defect, insufficiency, or want of repair of such bridge, culvert, or sluiceway, or dangerous embankments and defective railings, which renders it unsuitable for the travel thereon." Laws 1893, c. 59, s. 1. The first section of chapter 76, Public Statutes, for which this section is in part a substitute, was as follows: "Towns are liable for damages happening to any person, his team or carriage, traveling upon a highway or bridge thereon, by reason of any obstruction, defect, insufficiency, or want of repair, which renders it unsuitable for the travel thereon." A comparison of the two indicates an intention

to materially limit the liability imposed. In place of the words, "highway or bridge thereon," in the second line, are substituted the words, "bridge, culvert, or sluiceway, or dangerous embankments and defective railings, upon any highway." The words, "traveling upon a highway or bridge," were introduced into the statute at the time of the General Statutes in 1867 (G. S., c. 69, s. 1; R. S., c. 57, s. 1), and "appear to be used here for the purpose of showing that it was the object of this section of the law to give a remedy to the person honestly and properly using the highway or bridge which the town was bound to maintain and keep in suitable repair." *Woodman* v. *Nottingham*, 49 N. H. 387, 391. Construing the new language with the judicial exposition of the meaning attached to so much of the language of the old statute as was retained, it would seem to follow that while under the former statute one using any part of the highway as a traveler might have an action, under the new no action was given except to one injured while so using the parts of the highway enumerated in the section, namely, a bridge, culvert, sluiceway, or embankment. *Ford* v. *Braintree*, 64 Vt. 144. This question, however, is not now presented. The remaining change was the insertion of the words, "of such bridge, culvert, or sluiceway, or dangerous embankments and defective railings," after the words, "want of repair."

The result of these changes is, that while by the repealed statute a traveler injured by reason of any obstruction, defect, insufficiency, or want of repair which rendered the highway unsuitable had his action, no right of action is given by the new statute unless the damages happen by reason of the obstruction, defect, insufficiency, or want of repair of a bridge, culvert, or sluiceway, or dangerous embankments and defective railings, which the person injured was using for travel. Under the former statute, the nature, cause, or location of the obstruction was immaterial if the unsuitable condition resulted from any material cause which the town could remedy and which they were in fault for not correcting before the accident. *Trust Co.* v. *Portsmouth*, 59 N. H. 33; *Ray* v. *Manchester*, 46 N. H. 59; *Johnson* v. *Haverhill*, 35 N. H. 74. The law did not consider the cause of the unsuitability of the highway, but the condition at the time. *Hardy* v. *Keene*, 52 N. H. 370, 378. Consequently, liability existed for a condition produced by the carelessness of third parties, causing obstructions upon or near the traveled path at any point in the highway, upon the ground that the town ought to have known of and obviated the danger before the accident, although the obstructions were no part of the highway construction maintained by the town. *Parsons* v. *Manchester*, 67 N. H. 163; *Manchester* v. *Warren*, 67 N. H. 482; *Manchester* v. *Quimby*, 60 N. H. 10; *Plummer* v. *Ossipee*, 59 N. H.

55; *Gale* v. *Lisbon*, 52 N. H. 174; *Darling* v. *Westmoreland*, 52 N. H. 401; *Bartlett* v. *Hooksett*, 48 N. H. 18; *Palmer* v. *Portsmouth*, 43 N. H. 265; *Chamberlain* v. *Enfield*, 43 N. H. 356.

The changes introduced into the statute indicate a purpose to greatly limit liability arising in this way, if not to entirely remove it; for no liability can arise at any portion of the highway other than those enumerated, and not then because the obstruction renders the highway unsuitable, unless the matter complained of constitutes an obstruction, defect, insufficiency, or want of repair in a structure the defect in which is made a ground of liability. Under the repealed statute, carelessness of a surveyor or some private individual, while engaged in doing a lawful work in a highway, might produce an unsuitable condition for which while the work was in progress the town might be liable, although not liable for the negligent act itself. As in *Hardy* v. *Keene*, 52 N. H. 370, although the town was not liable for the negligence of the highway surveyor in erecting a derrick beside the highway, it was considered that, if the unsafe derrick beside the highway rendered the highway unsuitable, the town would be liable under the highway statute, if it had notice and an opportunity to remove the danger before the accident. While an insecurely fastened derrick, erected beside a highway for the purpose of repairing a culvert, might render the highway unsuitable at the culvert, the circumstances would be exceptional under which it could be said that such a derrick constituted a defect in the culvert.

In the present case the plaintiff, walking upon a sidewalk in Concord, fell into a trench dug across the path by the adjoining owner for the purpose of repairing the private sewer or drain leading from the dwelling-house upon the adjoining lot to the public sewer in the street. The open trench, unguarded and unlighted, was evidence of an unsuitable condition of the highway which caused the plaintiff's injury. A pile of earth, lumber, a stick of wood, or a carpenter's bench similarly left might also tend to support a claim of unsuitability. It would be a duty of the town, enforceable by indictment if they knew or ought to have known of the obstruction, to have removed it. P. S., *c.* 75, *s.* 1. For such breach of duty, the legislature, in the absence of the express notice provided for by section 2, chapter 59, Laws 1893, has abolished the unlimited right of private action formerly existing. As has been suggested, to maintain her action the plaintiff must establish that the matter of which she complains as the cause of her injury, and which she alleges rendered the highway unsuitable, was an obstruction, defect, insufficiency, or want of repair of one of the highway structures named in the statute. It is apparent that the unlighted and unguarded trench (which

upon the facts stated must be found to have been the immediate cause of the injury) was neither a bridge, a culvert, or a sluiceway. It is suggested that the house-drain of Akron pipe, for the repair of which the trench was dug, is included within the terms "culvert or sluiceway." The fact that a trench was dug for the purpose of laying a house-sewer, or that a derrick was improperly erected beside a highway to build a culvert, would not transform the uncovered trench or unsafe derrick into a culvert or sluiceway. The fact that the construction complained of was intended to be used in constructing or repairing a culvert or sluiceway would be as immaterial as was the fact in *Owen* v. *Derry*, 71 N. H. 405, that the obstruction then complained of had once formed part of a culvert. Whether either of the terms "culvert" or "sluiceway" was understood by the legislature to include conduits constructed in the highway for sanitary drainage, or aqueducts for public or private service, which form no part of the highway but which are laid in the highway as matter of convenience and for purposes distinct from the promotion of public travel, may be a question of considerable difficulty. But it is unnecessary now to decide it; for if it be conceded that the house-drain of Akron pipe is included within the terms "culvert or sluiceway" as used in the statute, and if it be assumed that evidence that there was some trouble with this private drain furnishes a sufficient foundation for the inference that it was obstructed, defective, insufficient, or out of repair, such condition of the Akron pipe was not the proximate cause of the unlighted and unguarded trench which caused the injury. That condition was due to the wrongful, responsible, intervening act of the adjoining landowner. Upon the facts stated, it could not be found that the obstruction of the house-drain caused the unsuitable condition of the highway. *McGill* v. *Granite Co.*, 70 N. H. 125, 130. If an unsuitable condition of the highway caused by insufficiency in structures of this character is within the terms of the statute, there is no ground for the conclusion that an unsuitable condition of the highway due to other causes is within the statute merely because of the location of the alleged obstruction or defect in the highway at, or near, or over such a conduit. The practical result of such a construction would be to render towns liable for any defect in the highway surface in the portions of the highways where the travel is greatest, and would practically restore the repealed provisions of the Public Statutes in cities and villages. Such a result is forbidden by the manifest purpose of the legislation of 1893, and cannot be reached except by annulling the terms of the section which creates the liability only when the unsuitability of the highway is caused by insufficiency in the particular constructions named therein.

This view is supported by such cases as have referred to the question. In *Boyd* v. *Derry*, 68 N. H. 272, the holes in the sidewalk, of which complaint was made, were caused by the sifting of sand and gravel between the covering stones of the culvert; and it was held that upon this evidence a jury would be warranted in finding that the injury happened by reason of the defect, insufficiency, or want of repair of a culvert, within the meaning of the statute. In *Gale* v. *Dover*, 68 N. H. 403, the injury was caused by a defect in the covering of an opening into the drain below, and which was therefore a part of the culvert; while in *Owen* v. *Derry*, 71 N. H. 405, a petition for leave to file a claim for injury from a defective highway was dismissed because the plaintiff failed to allege as the cause of the injury any defect, insufficiency, or want of repair of the culvert near which the injury was received.

It is also claimed that the unsuitable condition of the highway was due to an insufficiency in "dangerous embankments and defective railings;" meaning that the trench dug to uncover the Akron pipe constituted the remaining sidewalk an embankment dangerous to travelers unless guarded by a rail. This clause of the act is criticised as grammatically incorrect. Assuming it to be so, the meaning is not doubtful. It may be if the word "with" were substituted for "and," or if the clause read "dangerous embankments defectively railed," the language would better satisfy a critical taste; but the meaning would not be altered. The reference is to an embankment dangerous because raised above the adjoining surface, which danger could be, but is not, guarded against by a suitable railing. The dangerous embankment and railing defective or totally wanting together constitute the defect. *Owen* v. *Derry*, 71 N. H. 405, 406. An embankment is defined as "a mound, bank, dike, or earthwork raised for any purpose, as to . . . carry a canal, road, or railway over a valley." Cent. Dict. But so far as the danger to highway travel is concerned, it cannot matter whether the raised condition above the adjoining soil is produced by filling the roadway or digging away the soil adjoining. A road along the side of an excavation may be a dangerous embankment within the statute. That the raised condition was produced by digging away rather than by filling in, may not be sufficient answer to the claim that the structure so produced is an embankment as intended by the statute. "Any town which neglects to make any new highway or alterations in an existing highway therein, as laid out or altered, . . . or to cause a dangerous embankment or causeway in such highway to be securely railed, or otherwise to keep any such highway in good repair suitable for the travel thereon, shall be fined for such

neglect." P. S., *c.* 75, *s.* 1. The specific obligation to securely rail a dangerous embankment has been a part of the statute law since the Revised Statutes of 1842 (*c.* 53, *s.* 1). The statute of 1893 must have been made in view of the statute cited, imposing the obligation under the penalty of a fine. The liability of towns is not absolute, but is created only by their negligence. They are not liable for an unrailed embankment under either statute unless it is one which ought reasonably to have been railed to make the highway safe. Therefore the question in such cases is whether for the repair of the unsuitable condition of the highway reasonable men would or not have erected a railing. If the erection of a railing is not the repair reasonably required,—if reasonable men would have done something else than erect a secure railing,—it cannot be found that the want of the railing is the cause of the injury. The question is not whether a railing would have rendered the highway safe and prevented the accident, but is whether repair of that character was reasonably required. Whether the absence of a railing is a defect, is a question of fact. *Knowlton* v. *Pittsfield,* 62 N. H. 535. Whether a proper correction of the unsuitable condition of the highway reasonably involves the erection of a railing, is also a question of fact. But neither question is to be determined by the jury without evidence.

In this case an open trench across the sidewalk was left unguarded and unlighted. Upon this evidence it could properly be found that the work of reconstruction or repair of the house-drain was negligently conducted. Similarly, any excavation made in the highway and left unprotected would be evidence of negligence in the work. The safe conduct of such enterprises requires protection for the public while the work is in progress; but whether the town is bound under its duty of highway repair to fence against temporary dangers of this character, is a different question. If the town were indicted because of the existence of the uncovered trench across the sidewalk, and fined, the expenditure of the fine by an agent appointed by the court to put the highway in repair (P. S., *c.* 75, *s.* 6) in causing the trench "to be securely railed" would be an absurdity. The obvious and only reasonable repair of the highway would be to fill the ditch. A railing across the path would be in itself an obstruction to travel. The embankments which the defect in railing brings within the statute are only such as in the proper construction or maintenance of the highway the town ought to rail.

As before stated, the purpose of the legislature in 1893 was to limit the liability of towns to injuries arising from defects in definite portions of the highway necessary to their use by the public, and forming portions of the roadway used by travelers,—

bridges, culverts, sluiceways, and embankments which safe construction and maintenance required to be railed as permanent parts of the highway. An interpretation of the statute which, under the guise of their duty to securely rail dangerous embankments or to maintain a sufficient culvert or sluiceway, should render them responsible for the negligence of third persons rightfully or wrongfully engaged in constructive work in the highway, would defeat the legislative purpose and restore the condition under which the defendants were adjudged liable in *Hardy* v. *Keene*, 52 N. H. 370, 378. The policy of the law is settled by the legislature. The only office of the court is to enforce the legislative purpose, which in this case is plain.

*Exception overruled.*

CHASE and WALKER, JJ., concurred.

REMICK, J., *dissenting.* I am unable to assent to the conclusion of the majority, that the purpose of the legislature of 1893 was to limit the liability of towns to injuries arising from such bridges, culverts, sluiceways, and dangerous embankments *only* as have been created by the town or city as permanent parts of the highway. No such limitation is expressed, and I discover no warrant for ingrafting such a limitation by judicial construction. In my opinion, a defective bridge, culvert, sluiceway, or dangerous embankment, temporarily existing, and of which the town or city has knowledge, is no less a defective bridge, culvert, or sluiceway within the meaning of the statute, because it does not exist as a permanent feature of the way. Nor am I yet ready to agree that a dangerous embankment, in order to be within the meaning of the statute, must be at the side of the road. If a bridge is carried off, or a section of highway is washed out or otherwise removed, making a dangerous bank across the way at each end of the chasm, of which the town or city has knowledge, and which reasonably ought to be railed, I am not yet prepared to assent to the proposition that such dangerous banks are not " dangerous embankments " within the meaning of the statute.

I am authorized to say that Judge *Bingham* concurs in this dissent.