Coös,
May 7, 1918.

### HILDA BENOIT *v.* CHASE B. PERKINS *& a.*

Where one voluntarily undertakes to do a thing, whether by representation or by positive act, the duty of exercising care in making the representation or doing the act is imposed upon him.

A concealment of known facts which misleads another to his damage, does not constitute actionable fraud unless there be some obligation to disclose the facts concealed.

It is not error to refuse to give an instruction unobjectionable as matter of law, if there be no evidence to which the legal proposition is applicable.

Though an accidental misstatement of the evidence by counsel does not render a trial unfair as matter of law, his misstatement, under objection, of the evidence material upon a vital point in the case, though unintentional, is reversible error unless there is a finding that the trial was not thereby rendered unfair.

The extent to which cross-examination should be carried is a question for the trial court.

The supreme court has no jurisdiction to set aside a verdict as against the weight of the evidence.

CASE, in the nature of deceit to recover damages for injuries received while employed as a companion of one Marie Bordet.

The declaration alleged that the defendants were the agents, counsellors and next friends of one Marie Bordet, that she was of unsound mind, was subject to fits of insanity in which she was liable to do injury to herself and others, that the defendants had assumed the care of her and knowing the fact of Mrs. Bordet's insanity conspired together to keep knowledge of it from the plaintiff in order to induce her to enter Mrs. Bordet's employ; that in ignorance of Mrs. Bordet's condition the plaintiff did enter her employ and because of the condition which the defendants concealed from her was injured. Trial by jury upon the general issue and verdict for the

plaintiff.  The defendants excepted to the denial of their motions for a nonsuit and a verdict, to the admission of evidence, to statements of plaintiff's counsel in argument and to certain instructions given the jury.

The evidence tended to prove that Mrs. Bordet's husband had been employed at Wentworth Hall, a summer hotel in Jackson, for many years.  He owned a cottage there in which he and Mrs. Bordet spent at least one winter, though usually they lived in New York during that season.  The defendant James N. Berry had also been employed for years as manager of Wentworth Hall and lived there with his wife when the hotel was open.  He also owned a cottage in Jackson in which he lived at other times.  In the fall of 1914 Mrs. Bordet's husband died and Mr. and Mrs. Berry went to New York with Mrs. Bordet and her husband's body.  Mrs. Bordet spent the winter in New York but in May, 1915, came to Jackson going to cottages kept by the other two defendants, Mr. and Miss Perkins.  The mother of Mrs. Bordet had died the year previous and her husband's will was imperfectly executed.  From the loss of her husband and mother and impending financial trouble, Mrs. Bordet became despondent and depressed in mind and while at the Perkins' cottages developed fits of mental instability in which she endeavored to commit suicide.  Mr. and Miss Perkins were advised of her condition, that she was liable to repeat the attempts and needed institutional care.  Neither of the defendants wished her to stop at their resorts during the summer, though there was no evidence she desired to do so.  The defendants' evidence was that she wished to live at her own cottage and desired a companion.  A Miss Trickey, who lived in Jackson, having learned this fact from a Mrs. Harriman, meeting Mrs. Benoit in Bartlett, where she lived, asked her if she knew of a good woman who would go to Jackson and stay with Mrs. Bordet.  Mrs. Benoit replied that she might like to go herself and arranged to come to Jackson to see about taking the place.  Upon two occasions she saw Mrs. Bordet at the Perkins' cottages and agreed with her upon the employment and its terms. Upon her first trip to Jackson she met Mr. Berry at the Jackson Falls House where Miss Trickey lived and had an interview with him.  The defendants' evidence was that the interview was arranged for the purpose of informing the plaintiff of Mrs. Bordet's condition before she entered into any agreement with her and that this condition was fully explained to her.  The plaintiff denied that she was told of Mrs. Bordet's mental instability, suicidal tendencies

or attempts to kill herself. June 26, 1915, the plaintiff went to live with Mrs. Bordet at her cottage in Jackson. Nine days later, July 5, Mrs. Bordet committed suicide by setting fire to her clothing, which she had previously saturated with alcohol. The plaintiff claimed injury from the shock of the tragedy and the physical exertions she was thereby called upon to make. The evidence was printed in full as an appendix. Further facts, and the ground of the exceptions taken, appear in the opinion. Transferred from the December term, 1916, of the superior court by *Chamberlin,* J.

*Drew, Shurtleff, Morris & Oakes (Mr. Morris* orally), for the plaintiff.

*Sullivan & Daley (Mr. Sullivan* orally), with whom was *E. E. Hastings* (of Maine), for the defendants.

PARSONS, C. J. The gist of the plaintiff's complaint is that the defendants knowing that Mrs. Bordet was mentally unbalanced with suicidal tendencies induced or permitted her to enter Mrs. Bordet's employ without informing her of that fact. The defendants' answer before the jury was that they did tell the plaintiff all they knew. This issue was there tried and this court has no jurisdiction to revise the finding of the jury or to set it aside as against the weight of the evidence. The only question here is whether there was any evidence in support of the conclusion reached by the jury. The plaintiff's statement that she was not told was some evidence, and if a wrong result has been reached the defendants have no remedy here.

The defendants contend in support of their motion for a directed verdict that upon the evidence their failure to inform the plaintiff was not a breach of any legal duty owed by them to her. If it be assumed that the defendants, knowing Mrs. Benoit was proposing to enter Mrs. Bordet's employ, were under no legal obligation to the plaintiff to act at all in the matter, to give her any information, still there was no error in the denial of the motions for a nonsuit and a general verdict for the defendants. "Where one voluntarily undertakes to do a thing, whether that be by representation or by positive act, a duty is imposed upon the party making the representation or doing the act of exercising care." *Conway Bank* v. *Pease,* 76 N. H. 319, 324; *Pittsfield Co.* v. *Company,* 71 N. H. 522, 533; *Edwards* v. *Lamb,* 69 N. H. 599; *Hammond* v. *Hussey,* 51 N. H. 40. There was

evidence that, when Mrs. Benoit came to Jackson upon information
of the opportunity, she was met at the Jackson Falls House by the
defendant Mr. Berry and had a conference with him as to the pro-
posed employment.   The defendants say and their evidence tended
to prove that the meeting was arranged in order that Mrs. Benoit
should be informed of Mrs. Bordet's condition before she negotiated
with her as to the proposed service.   The accounts of this interview
differ in only one particular.   Mr. Berry and Mrs. Berry say the
plaintiff was told of Mrs. Bordet's suicidal tendencies and attempts.
Mrs. Benoit says the contrary and the jury have found with her.
Assuming the defendants are correct in their contention that they
were under no legal obligation to inform Mrs. Benoit as to Mrs.
Bordet's condition, it could be found from the evidence that Mr.
Berry at least undertook to give her such information as was neces-
sary for her safety.   Undertaking the task he was bound to care in
its execution and liable, if he carelessly omitted to inform her of an
essential detail.   A fortiori he is liable if, as could be found, he with
intent to defraud concealed from her facts material to her safety,
and, because of her lack of information, she acted to her subsequent
injury.

As reported in the case, the motions for a nonsuit and verdict are
general, in behalf of all the defendants collectively.   Exceptions to
such motions are overruled when it appears there was evidence
which prevents the allowance of the motions as made.   Moody v.
Perley, 78 N. H., 17, 18.   The stenographer's minutes, printed as an
appendix, state that the motion for a directed verdict was "for the
defendants individually and collectively."   The exception was not
so transferred and no argument has been made of the evidence as
applied to separate defendants.   The question may be of no practi-
cal importance and its consideration is postponed until asked for by
the parties.

The ground upon which the denial of the motion for a verdict has
been placed was recognized in the defendants' second request for
instructions which was: "If you find the defendants undertook to
disclose to the plaintiff, Mrs. Benoit, the mental condition of Mrs.
Bordet and that the defendants told the plaintiff the facts as they
were, or as they, the defendants, believed them to be, then the de-
fendants are not liable."   This instruction was given and a verdict
based thereon would be legally sound, and in any event irrevisable
here, the law being stated as the defendants requested.   The fact
that the case contained evidence from which could be found a

breach of a duty assumed by at least one of the defendants, requires. the overruling of the contention that there was nothing for the jury. This conclusion is reached without considering whether upon this or upon other grounds the evidence would sustain a verdict against. all of the defendants.

The exceptions to the instructions refused and given are next to be considered.

As the jury were told in the charge, the evidence did not disclose false statements made to the plaintiff as to Mrs. Bordet's condition but there was some evidence that the plaintiff was not told of Mrs. Bordet's occasional mental instability and suicidal attempts. Fraud may consist in the intentional concealment of a material fact as well as in a false statement of a fact. *Hanson* v. *Edgerly*, 29 N. H. 343, 354; *Page* v. *Parker*, 43 N. H. 363, 367. "At common law, a fraud may be committed by the omission to disclose a material fact under some circumstances." *Stewart* v. *Emerson*, 52 N. H. 301, 320. But. the fraudulent concealment of known facts with intent to mislead and which in fact does mislead another to his damage does not constitute actionable fraud unless there be some obligation which the law recognizes to disclose the facts concealed. *Potts* v. *Chapin*, 133 Mass. 276. "I am not aware of any case in which an action at law has been maintained against a person for an alleged deceit, charging merely his concealment of a material fact which he was morally but not legally bound to disclose." *Lord Chelmsford*, *Peek* v. *Gurney*, L. R. 6 E. & I. App. 377, 390. The duty to speak must arise from the circumstances, or there must be some relation of trust and confidence between the parties upon which to build the duty to disclose, before the failure to disclose can be deemed a fraud, whatever motive led to the concealment. 1 Story's Eq., *ss.* 207, 208; 2 Kent Com., *ss.* 482–492. "If this failure [to give information] were not in and of itself a fraud, it is not made so by alleging that it was induced by a desire to deceive and defraud the plaintiff. (*Van Weel* v. *Winston*, 115 U. S. 228). It was not a fraud unless there was some legal duty resting upon the defendant to make the disclosure. It may be that *in foro conscientiae* the disclosure should have been made, but unless a party has the right to this information not only in that forum but *juris et de jure*, the withholding of it cannot be classed as a legal fraud. . . . There must be some relation of trust and confidence existing between the parties upon which to build the duty to disclose before the right to a disclosure can be enforced by the courts. . . . No additional strength is given to the allegation of fraud by stating that Packard

and defendant colluded and conspired together to conceal the fact for the purpose of defrauding the plaintiff. If there were no duty resting on either to disclose the fact, each had the right to agree to be silent. The agreement to be silent where each has the right so to be, is not made illegal by alleging that it was done pursuant to conspiracy and collusion between the parties, without going further and showing that the concealment was but one step in carrying out a conspiracy which was unlawful, and it must be shown that it was unlawful and how, and what the steps were which were illegal or fraudulent. Mere general allegations of fraud or conspiracy are of no value as stating a cause of action." *Wood* v. *Amory*, 105 N. Y. 278, 281, 282.

The defendants requested the court to charge the jury, "If you find that there was no relation existing between this plaintiff, Mrs. Benoit, and the defendants, or either or any of them by reason of which said defendants were under any legal obligation to disclose to the plaintiff, Mrs. Benoit, any facts tending to establish the sanity or insanity of Mrs. Bordet, Mrs. Benoit having asked for no information respecting Mrs. Bordet's mental condition then your verdict must be for the defendants," and excepted to the refusal to instruct as requested. There was no evidence that Mrs. Benoit made any inquiries of the defendants as to Mrs. Bordet or the nature of the employment she proposed to undertake. It does not appear that she trusted anything to them. In fact she appears to have resented their interest in the matter. For she testified she did not see at the time why she should see Mr. Berry when she was going to work for Mrs. Bordet and was making the trade with her. It is not claimed that this request does not correctly state the law or was inapplicable to the evidence, but the contention is that the request was substantially covered by the instructions given. This position is well taken. The necessity of legal obligation to speak as the foundation of a charge of fraud from failure to do so was recognized when it was said: "In order to be a material misrepresentation there must be some relations existing between the parties in the way of contracts, of employment, of dealings in some form where there is a duty on the part of the person knowing an event or a matter which might be important to state." As to what would constitute such a relation in this case the jury were further instructed: "The allegation in the writ is that these defendants assumed to act for Mrs. Bordet, whom they knew was an insane person. . . . If they were acting for Mrs. Bordet and Mrs. Bordet was competent to authorize them to

act, or ratify their acts, they would be her agents. If they were act-
ing as next friends, as it is stated in the writ, if they assumed to act
for her and take care of her in her condition, which they knew and
understood, as far as the evidence disclosed, then they were bound
to act in good faith and honesty. It was their duty to disclose to
this plaintiff at that time, before she engaged there, any information
which as honest and reasonable men and women they should disclose
there to enable her to protect herself. . . . In other words, you
must find, before you can find a verdict for the plaintiff, that they
assumed to act for her, for Mrs. Bordet, in some capacity." To
this instruction the defendants excepted upon the ground that there
was no evidence that the defendants assumed to act for Mrs. Bordet.
If there was no evidence that the defendants assumed to act for Mrs.
Bordet in some capacity, the jury could not find they did so assume,
and under the law laid down in the instructions the issue should not
have been submitted to the jury. The preliminary question in
consideration of this exception is, what was understood at the trial
to be meant by the expression "acting for Mrs. Bordet in some
capacity,"— what from the charge must the jury have understood
thereby? The plaintiff's claim was that she was injured because
she entered Mrs. Bordet's employ without understanding its dangers.
If she made her contract of employment with Mrs. Bordet, it was
Mrs. Bordet's duty to warn her. If she made it with some one else
acting for Mrs. Bordet, the duty of information rested with them.
"Acting for Mrs. Bordet in some capacity" must therefore have been
intended to mean representing her in relation to the proposed em-
ployment. The charge expressly so implies, for after stating as be-
fore quoted that the duty to speak must arise from some relation
existing between the parties by way of contracts or employment, the
abstract statement is illustrated by the case of one employing an-
other to work in his barn without informing him of a defect in its
floor or to care for a vicious horse without giving notice of the char-
acter of the horse. From this language the jury could have inferred
that they were at liberty to find that the defendants acted or as-
sumed to act for Mrs. Bordet in making the contract of employment
and that if they did so act they were legally bound to disclose what
they knew. As a legal proposition, if these facts could be found, the
statement may be unexceptionable. The case would then be of
parties dealing together, one being in possession of facts material to
the treaty, which the other did not know and could not learn. The
case would be within *Hanson* v. *Edgerly* and *Page* v. *Parker, supra,*

but, as the defendants contend, the rule was inapplicable because there was no evidence in the case authorizing the conclusion that the defendants acted or assumed to act for Mrs. Bordet in the dealing which resulted in the contract. If the defendants or either of them had anything to do with the means by which information of the situation which Mrs. Benoit accepted reached her, the plaintiff failed to establish the fact by proof. Mrs. Benoit, learning of the opportunity by means, so far as the case goes, entirely independent of the defendants, came to Jackson and made her contract with Mrs. Bordet and not with or through any of the defendants, acting or assuming to act for Mrs. Bordet. Much stress has been laid in the argument upon the defendants' interest in Mrs. Bordet and the subject was referred to in the charge. Long acquaintance with and friendship for Mrs. Bordet doubtless placed upon the defendants a moral if not a legal duty to care for her and to see that whoever took charge of her was a suitable person and was instructed as to the care necessary for her protection, but this duty whether legal or moral was owed Mrs. Bordet and not to the plaintiff.

If in performance of a duty they owed Mrs. Bordet, the defendants employed the plaintiff to care for her, the legal duty to Mrs. Benoit of informing her of the nature and perils of the service required would have been imposed; but, in the absence of evidence that acting for themselves or for Mrs. Bordet they took some part in the employment of the plaintiff, the case was improperly made to turn upon such employment by the defendants, of which there was no evidence. It is not error to refuse to give an instruction unobjectionable as matter of law, if there is no evidence to which the legal proposition is applicable. *Kuba* v. *Devonshire Mills*, 78 N. H., 245. But it is error to submit to the jury a question upon which there is no evidence. *Moody* v. *Perley, supra.* The exception to the charge upon this ground is sustained. Whether the fraud charged was the proximate cause of the damage claimed has not been questioned.

One of the defendants, Miss Perkins, testified that after Mrs. Bordet's death she took possession of her money and jewelry and turned it over to her executor. Subject to exception, the plaintiff was permitted to ask her upon cross-examination if she did not have trouble with the executor. The question was competent upon the witness' credibility. The extent to which an examination of this nature should be carried is settled at the trial. *Gutterson* v. *Morse*, 58 N. H. 165.

The remaining exceptions necessary to be considered are to the

argument of counsel.    One is to a reference to the testimony just referred to as admitted subject to exception.   The evidence was in the case and counsel could use it for the purpose for which it was competent.    Use for a purpose for which it was incompetent would be error, and, if permitted by the court subject to exception, would destroy the verdict.    *Burnham* v. *Stillings*, 76 N. H. 122.    The record does not show what use counsel proposed to make of the evidence.    As far as the record shows, the only question presented to the court when exception was taken was whether there was such evidence in the case.

The remaining exceptions relate to misstatements of the evidence made in the course of the argument.    "While a verdict may be set aside for the introduction in argument of facts not contained in the evidence, and a persistent misstatement of the evidence may amount to such introduction so as to render the trial unfair, a mere misrecollection or accidental misstatement of the evidence does not render the trial unfair as matter of law."    *State* v. *Wren*, 77 N. H. 361, 364. In the case cited, the error consisted in ascribing the testimony of one witness to another.    The jury were cautioned by counsel and court to rely upon their own recollection of the testimony of the witnesses and not upon the statements of counsel and the error was found by the trial court to be harmless in fact.    One of the statements objected to in the present case, however, cannot be passed over as "mere misrecollection or accidental misstatement of the evidence."    Mrs. Benoit testified that Mr. Berry telephoned to her asking her what her terms would be.    Mr. Berry denied making such inquiry or having any telephonic communication with the plaintiff.    Counsel stated that a Mrs. George, who was a witness, when asked if she saw Mrs. Benoit replied, "only when she came to telephone to Mr. Berry," and argued with great force the value of a fact coming in this way from a witness incidentally and without express inquiry upon the point.    The vital point in the case turns upon the credibility of Mr. Berry.    Despite objection, the statement was twice repeated, reiterated and enlarged upon.    There was no such testimony in the case.    What Mrs. George did say was that Mrs. Benoit came to her house to answer by telephone a letter she had received from Miss Trickey.    It is not probable counsel intended to misstate the evidence.    He may have had in mind what he had expected the witness to say rather than her actual testimony. If so, he placed before the jury a fact which he failed to get into the evidence, material upon a vital point in the case and when the matter

was called to his attention he reiterated the statement and enlarged upon it. "A statement by counsel in argument of material facts of which there is no evidence, direct or inferential, is ordinarily reversible error, unless there is a finding that it did not render the trial unfair." *Gosselin* v. *Company*, 78 N. H., 149, 151. "When exception was taken to the improper statement, it was incumbent upon the defendant to withdraw it, obtain an instruction to the jury not to consider it, and a finding of fact from the presiding justice that the trial was not rendered unfair thereby." *Lemay* v. *Demers*, 77 N. H. 563, 564. These cases of recent date merely restate the rule which has been consistently applied since the decision of *Bullard* v. *Railroad* in 1886,— 64 N. H. 27. Under this rule a verdict is set aside not as a punishment for the misconduct of counsel but to secure to the oppo-. site party a fair trial. *Bullard* v. *Railroad, supra.* Hence the good faith of counsel in stating the fact as one proved by the evidence is immaterial; the question remains, has the trial been fair? Here the jury has been urged to use in the decision of the issue before them a fact which has not been proved. If the fact were an immaterial one, or from the situation it was not probable the jury who heard the evidence were misled by the misstatement of it, it would be plain that there was no lack of fairness in the trial. But the fact stated may be, as in this case, a material one. The forcible and repeated statement of it by counsel may have had more influence upon the minds of the jury than their recollection of what the witness really said. If this latter is probable, it is probable the verdict has been unfairly obtained. In the case of such an error how may it be corrected? To require counsel stating his recollection of the evidence to reverse himself or run the risk of losing the verdict whenever objection is made, should subsequent investigation of the record disclose he was in error, would give the objecting party an unfair advantage. To stop the argument for an examination of the record whenever controversy arose as to the evidence, would be in most cases impracticable. When, as in this case, upon subsequent examination of the record it appears that the objecting party was in the right and that there was a material misrepresentation of the evidence by the party obtaining the verdict, the verdict ought not to stand, if produced by the misrepresentation. Whether the trial was rendered unfair by the error is a question of fact to be settled, like all questions of fact relating to procedure at the trial, by the presiding justice. In the course of his argument, counsel disclaimed any intention to misquote the evidence and the jury were instructed·

generally that they should be guided by their own recollection of the evidence and not by counsel's recital of it, although nothing was said by counsel or court with special reference to this particular statement. Conceding that for a misstatement of this kind what took place was a sufficient compliance with the rule requiring withdrawal of an improper statement and obtaining disregarding instructions, there is no finding that the error was harmless in fact. The burden of obtaining this finding is properly placed with the party in fault. It cannot be said there was no evidence upon which a finding fatal to the verdict could be made. Hence in the absence of the contrary finding, the verdict cannot stand.

*Exceptions sustained in part: verdict set aside.*

WALKER and PLUMMER, JJ., concurred: PEASLEE, J., concurred in the result: YOUNG, J., dissented.