Strafford,  
Dec. 5, 1922.

### WILLIAM F. CHAPMAN, *Adm'r, v.* LEE.

An instruction that "though the plaintiff was driving a Packard car, it doesn't look as though he was a very rich man," &c., is prejudicial and ground for setting aside a verdict.

One is traveling upon a culvert, within the meaning of the statute of highways, who is traveling upon the surface of the roadbed which is directly dependent upon the culvert for its support and a town is liable for an injury caused by the insufficiency of such support.

One traveling on a highway is injured "by reason of" a defect in a culvert if there is a defect in its structure which creates a depression in the highway, rendering it unsuitable for travel, and his injury was caused by the front wheels of his automobile encountering such depression and the consequent slipping of the hind wheel down an embankment.

CASE, to recover damages under Laws 1893, *c.* 59, *s.* 1, for the death of plaintiff's intestate. Trial by jury and verdict for the plaintiff.

A bill of exceptions was allowed at the September term, 1921, of the superior court, by *Branch,* J., upon the defendant's exceptions to the admission of evidence and to the charge. The facts appear in the opinion.

*Sleeper & Brown (Mr. Sleeper* orally), for the plaintiff.

*Hughes & Doe (Mr. Doe* orally), for the defendant.

SNOW, J.   The plaintiff was the father of his intestate, and brings this suit under Laws 1893, c. 59, s. 1, to recover damages for the latter's death.   He was the owner and driver of a Packard automobile, in which the intestate was riding at the time of the accident. In a supplemental charge to the jury, which had failed to agree after being out for a day, the court stated, "As you have learned during the course of the trial, this is the second time this case has been tried, and even though the plaintiff was driving a Packard car, it doesn't look as though he was a very rich man, and if this goes on repeatedly, why both parties will be in a worse situation than as though they had never tried the case, and it is very desirable that you should agree if you possibly can at this time."   The defendant excepted to the statement that "While the plaintiff was driving a Packard car he does n't appear to be a very rich man."

The statement excepted to was equivalent to an instruction that the plaintiff was a poor man.   His wealth or poverty was not relevant to any issue in the case.   If evidence of such fact had been offered, it would have been excluded as incompetent.   If the statement had been made by counsel in argument, the verdict would have been set aside.   *Caverhill* v. *Railroad,* 77 N. H. 330, 331; *Lemay* v. *Demers,* 77 N. H. 563, 564; *McDonnell* v. *Merrill,* 79 N. H. 379; *Duplessis* v. *Guyon, ante,* 317.   The reason as well as the justice of such exclusion or reversal lies in the natural tendency of such a statement to prejudice and the presumption that it influences the jury and renders the trial unfair.   *Lemay* v. *Demers, supra; McDonnell* v. *Merrill, supra; Benoit* v. *Perkins,* 79 N. H. 11, 20; *Parker* v. *New Boston,* 79 N. H. 54, 56; *Story* v. *Railroad,* 70 N. H. 364, 387; *Bullard* v. *Railroad,* 64 N. H. 27, 32.   The reason applies with equal, if not greater, force to a statement coming from the court instead of counsel.   The motive inducing an unwarranted statement is immaterial.   *Benoit* v. *Perkins, supra.*   Defendant's exception must, therefore, be sustained and the verdict set aside.

This conclusion renders it unnecessary to consider the defendant's exceptions to evidence.   But as the defendant's further exception to the charge raises questions which are likely to be involved in another trial of the case, it has been considered.

The plaintiff's intestate, a child of nine months, was killed by

the overturning of the automobile, as the car went off an unrailed embankment at or near a culvert upon the Haley road, so called, in the defendant town. The surface of the highway was sixteen inches above the stone covering of the culvert and five feet above the bed of the stream. The span was about one foot. Owing to the insufficiency of the culvert to carry off the spring rains and melting snows in April preceding the accident in June, the waters had accumulated on the upper or easterly side of the road nearly to a level of the surface of the highway. The presence and passing of the waters thus accumulated, by softening and washing the filling supported by the culvert walls, had so undermined the surface of the highway that a portion of it had fallen in, creating a dangerous hole in the traveled way over, and along the northerly side of, the culvert. There was considerable travel over this road by teams and automobiles and it could be found that the culvert was not one which the ordinary reasonable man would have maintained at that place. *Hickey* v. *Berlin*, 78 N. H. 69, 70; *Hubbard* v. *Concord*, 35 N. H. 52, 66–73.

A citizen, having special occasion to use the road for heavy teaming, made temporary repairs in April by dumping rocks in the bottom of the hole. The attention of the town officials was called to the condition, but no other repairs were made prior to the accident. At the time of the accident, the hole or depression which was in the westerly portion of the traveled way had broadened out by use and travel, but the evidence was conflicting as to its depth and contour as well as to the exact distance of its deeper portions and easterly boundary from the easterly edge of the traveled way. The road for some distance in either direction from the culvert was upon a fill of an average width of about 11.5 feet from shoulder to shoulder, the traveled portion of which was 8 to 8.5 feet in width. The space between the easterly edge of the traveled way and the shoulder of the embankment where the car ran off was 10 inches wide and covered with a growth of grass, weeds and small bushes. This extended along past the end of the culvert for some distance in either direction. The end of the covering stones of the culvert was about flush with the slope of the embankment.

The course of travel over the culvert had varied. The westerly wheels of some vehicles had passed straight through the deeper portions of the depression. But the larger part of the travel had swung easterly of the original course of travel, making a more or less defined, but somewhat varying, wheel-rut through the shoaler por-

tions of the depression. The easterly wheels in the latter instances passed near the easterly edge of the traveled way and in some instances upon the narrow strip of grass ground between such way and the bank.

The embankment along the fill and over the end of the culvert could be found to be a dangerous embankment within the meaning of Laws 1893, c. 59, s. 1. It could be found that the hole or depression was of itself dangerous to the traveling public, especially to a traveler approaching the culvert without notice of the defect. The danger of the depression and of the embankment was materially enhanced, each by the proximity of the other.

The automobile driven by the father of the intestate approached the culvert from the northerly direction. He had driven down a steep hill upon an intersecting road. Upon completing a sharp turn into the Haley road, the driver was 111 feet from the culvert which, from that point, was approached upon a descending three per cent. grade. The driver was unfamiliar with the road and unaware of the culvert or embankment, both of which were concealed from his view. The car had a right-hand drive.

The driver testified in substance that, when he had turned into the Haley road, he saw a bad place which appeared to be practically in the middle of the road; that he followed what appeared to be the line of travel to the left (easterly) of the hole, his right front wheel passing through the smaller part of the depression; that as the car came into it he threw out the clutch and applied the brake; that as the front wheel started out of the depression and was turning into the road, he threw in the clutch and started his car along, whereupon he felt the slipping of his rear wheel as if upon grass and again applied the brake; that the left rear wheel went over the embankment and pulled the rest of the car after it; that the car did not go off the embankment until the front wheel had passed through the depression and the car had reached the culvert. There was evidence that the shoulder of the embankment was scraped or broken for a space at and near the culvert in either direction. It could be found from this evidence that the alternate application of the brake and power to the left rear wheel, incident to negotiating the depression, caused the wheel to slip upon the grass embankment, and thus to break down the shoulder of the roadway, causing the car to slide off the embankment.

"Towns are liable for damages happening to any person, his team or carriage, traveling upon a bridge, culvert, or sluiceway,

or dangerous embankments and defective railings, upon any high-way, by reason of any obstruction, defect, insufficiency, or want of repair of such bridge, culvert, or sluiceway, or dangerous embankments and defective railings, which renders it unsuitable for the travel thereon." Laws 1893, *c.* 59, *s.* 1.

The plaintiff claims that the death of his intestate was due to the negligent maintenance by the defendant town of a defective and insufficient culvert and of a dangerous embankment, one or both. The court submitted to the jury the questions whether such conditions, either or both of them, existed, were negligently maintained by the town and contributed to the accident. The defendant excepted to that part of the charge which left to the jury the question whether or not the injury was caused by the defect in the culvert. In support of its exception, the defendant contends that the hole or depression in the road was neither a defect in the culvert nor the legal cause of the accident within the meaning of the statute.

The distinctive functions of a culvert are to provide for the passage of water and to support portions of the highway through and under which it passes. In the enumeration of actionable defects of a culvert, the legislature must have intended to include any obstruction, defect, insufficiency or want of repair of the culvert which impaired the performance of either or both of these functions. It could be found that the hole in the Haley road was produced by the insufficiency of the culvert for the passage of the water of the stream or by a defect in its walls or covering which failed to support and retain the filling material of which the roadway was built.

The defendant concedes that the word "bridge" as used in the statute includes all portions of the structure that are required to render it complete according to the plan on which it is built; that a person is "traveling upon a bridge" within the meaning of the statute when he is traveling over that part of the way which is above the essential portions of the structure as well as when he is traveling over the part that spans the stream; and that if he is injured by a defect there existing, he is injured by a defect in such bridge. (*Wilson* v. *Barnstead,* 74 N. H. 78, 80). But the defendant contends that a culvert, being "a covered drain under a road, designed for the passage of water" (*Gale* v. *Dover,* 68 N. H. 403; *Boyd* v. *Derry,* 68 N. H. 272, 273), is not in and of itself the highway or roadway under which it runs and which it supports; that the traveled surface of the roadway above the culvert is not a part of the culvert

and therefore that a defect in such surface, although attributable to a defect in the culvert, is not a defect in the culvert within the meaning of the statute.

The statute, so far as it applies to culverts, provides in terms that "towns are liable for damages happening to any person . . . traveling upon a . . . culvert . . ., upon any highway, by reason of any . . . defect, insufficiency, or want of repair of such . . . culvert . . . which renders it unsuitable for the travel thereon." It was the obvious purpose of the legislature by the statute to afford protection to travelers upon highways from injuries caused by defects in culverts. The walls and coverings of culverts, so far as culverts are distinguishable from bridges, are buried beneath the roadway and are not directly traveled upon. It is not probable that the legislature intended to limit liability to instances of defective culverts where the road structure has been so far removed or impaired that the traveler or his vehicle will come in direct contact with portions of the underground drain itself. It is more probable that the legislature intended to include a remedy for injuries to travelers arising from dangerous conditions in the traveled way which are the natural and probable product of such defects. A hole or depression in the surface of the roadway is the natural manifestation of a defect or insufficiency of a culvert which has failed in its function of support. The superstructure dependent upon such support, according to its plan of construction, is the natural and most direct medium through which such a defect in the culvert may be transmitted to the traveled way. Damage happening to a person traveling upon a highway by reason of dangerous conditions in the traveled portions thereof, thus proximately due to a defect in a culvert, happens to him by reason of such defect within the meaning of the statute. Though not expressly stated in cases where the question has been directly in issue, this construction of the statute has been repeatedly assumed by this court. *Boyd v. Derry, supra*, 272, 273; *Owen v. Derry*, 71 N. H. 405, 406, 407; *Drew v. Derry*, 71 N. H. 113, 114; *Hickey v. Berlin, supra*, 71.

It could be found that the hole to which the plaintiff attributes the injury of his intestate was in the road structure, which was directly above or immediately adjacent to the walls and covering of the culvert and dependent thereon for support. It was the natural manifestation of the defect, so far as such a defect in the culvert could affect travel on the highway.

Damages, to be recoverable under the statute, must happen

to one traveling upon the culvert. *Drew* v. *Bow,* 74 N. H. 147, 148; *Wilder* v. *Concord,* 72 N. H. 259, 261. But one is traveling upon a culvert within the meaning of the statute who is traveling upon the surface of the roadbed which, under its plan of construction, is directly dependent upon the culvert for its support. It could be found that the plaintiff's intestate was so traveling at the time of the accident.

But counsel, in argument, contends that, if the immediate defect in a culvert (meaning a defect in its walls or covering) is by any means repaired, thereafter any defect in the roadway which is allowed to continue, although originally produced by the defective culvert, stands like a. defect therein arising from travel or other cause, and is not within the statute. The evidence does not conclusively show that the defect in the culvert here had been repaired, but if it did, it is a sufficient answer to counsel's contention that the repair of a defective culvert implies making the highway safe from the proximate results of the defect.

The verdict of the jury under the instructions of the court determined that the accident was not due solely to the carelessness of the driver. The care of the driver was not otherwise in issue.

It is argued that, it being the intention of the legislature to limit the liability of towns to injuries actually caused by the enumerated defects, the hole or depression was not a contributing cause of the injury within the meaning of the statute, but only the occasion of the change in the course of travel of the car in order to avoid the hole; that it was, therefore, error to permit the jury to base its verdict upon a finding that the hole caused the injury.

It could be found that the strain upon the shoulder of the road, the breaking of which permitted the car to fall over the embankment, was due to the reasonable efforts of the driver in the application of brakes and power in passing into and out of the hole in the road. Such defect, therefore, could be found to be a proximate cause of the accident. The fact that the unrailed embankment was also among the enumerated structures in the statute and could also be found to be a proximate cause of the injury, is of course immaterial to the present inquiry. Had the car, while traveling upon the culvert, struck a telephone pole or other obstacle through the skidding of the wheels incident to driving through the hole, it could likewise be found that the hole was a proximate cause of the accident.

It is suggested that it is false reasoning to say that the plaintiff's

intestate suffered an injury from a defect which he avoided. It has never been held that, in order to recover damages under this statute, the injury must be produced by collision with the defective structure. The language of the statute requires that the plaintiff be traveling on the culvert and that he be injured by reason of a defect in its structure which renders the highway unsuitable for the travel thereon. If, in traveling over the culvert, the wheels of the vehicle had been thrown violently upward by the defect, upsetting the vehicle or throwing the plaintiff out, it would be readily conceded that an injury thereby sustained happened to the plaintiff by reason of the defect. The accident happened to the plaintiff's intestate none the less "by reason of" the defect because the car was drawn or pushed sideways by the motion of the wheels of the car incident to the operation of passing the defect, instead of being lifted upward. The insidious slipping of the wheels upon the bank due to operating the car in its passage through the depression was as effective and direct in point of causation as a violent jounce would have been. There appears to have been no error in submitting to the jury the question whether or not the injury to plaintiff's intestate was caused by a defect in the culvert.

For reasons stated earlier in this opinion the order must be

*Exception sustained: verdict set aside: new trial granted.*

All concurred.