SIMON MENZOIAN *vs.* KASPER D. JOHNSON.

JANUARY 19, 1937.

PRESENT: Flynn, C. J., Moss, Baker, and Condon, JJ.

BAKER, J. In this action of the case in assumpsit, a jury in the Superior Court returned a verdict for the plaintiff in the sum of $4,662.50, and after the refusal of the trial justice to grant the defendant's motion for a new trial, he has prosecuted a bill of exceptions to this court.

This bill contains fifteen exceptions, of which the first to the fifth inclusive, and the ninth, fourteenth and fifteenth are now being pressed. The remaining exceptions, not having been briefed or argued, are deemed to have been waived.

The action is brought upon an alleged oral promise, claimed by the plaintiff to have been made to him by the defendant in the latter's store in Providence near the end of July, 1924, in substance, that if the plaintiff would release an injunction, which he had obtained in an equity suit against the defendant, and which prevented the sale of certain real estate, the title to which stood in the defendant's name, the latter would pay the plaintiff $3,000 when the property in question was sold. The defendant denies making any such promise.

The following facts appear, among others, from the evidence. The plaintiff, who was more or less illiterate and who did not speak or understand the English language very well, became a cobbler in Providence in 1919, following his discharge from the army, and so continued till early in 1924. His contention is that while so engaged he turned over such money as he accumulated to his brother Michael for safe keeping, and, also, that his brother bor-

rowed from him sums for use in the brother's furniture business. On April 8, 1920, a piece of property in Providence was purchased, Michael being named as grantee in the deed. The plaintiff claims that his money was used in this transaction, and that later other money of his was put into the property, of which, he contends, he was rightfully and equitably cotenant with his brother. November 10, 1921, Michael conveyed this property to the plaintiff, but on the same day took back a deed from him, which deed was not recorded till April 4, 1924.

Early in 1924, the plaintiff, then no longer in the cobbler business, worked for a short time in Michael's furniture factory, where he suffered an injury. Difficulty arose between the brothers and led to an argument concerning the property and its ownership, and Michael ejected the plaintiff, the brothers having been living together at this time. The defendant was recommended to the plaintiff as one who might be able to adjust these differences, and the plaintiff testifies that with this end in view he called upon the defendant, starting on March 27, 1924. On April 3, 1924, Michael conveyed the property in question to the defendant, the deed being recorded the following day, at which time the defendant executed to Michael an instrument setting out substantially that Michael was indebted to the defendant in the sum of $2,000, that the latter was holding the deed as security for such indebtedness, and that when this was paid in full he would reconvey the property to Michael.

The plaintiff also testifies that, following March 27, 1924, and up to the latter part of July, 1924, he called upon the defendant frequently to ascertain if he was bringing about a settlement of the plaintiff's affairs in connection with the property. At different times on these visits he claims that the defendant told him, in substance, not to spend money employing a lawyer but to wait, that he, the defendant, would fix things up. The plaintiff further gave evidence that in May he became nervous concerning a

certain writ of attachment and consulted the defendant, who said that the title to the property had been placed in his name but not to worry, that it was better that way and to say nothing, and that he would fix it up for the plaintiff. The defendant denies the making of the statements attributed to him, and these visits by the plaintiff.

In July, having heard that the property was to be sold, the plaintiff consulted an attorney who, on his behalf, filed the before-mentioned bill in equity in the Superior Court against the defendant and Michael. On this bill an *ex parte* order was obtained July 23, 1924, restraining the defendant herein from disposing of the property. On July 28, 1924, a decree for a preliminary injunction to this effect was entered in that court and vacated the same day, according to an entry on the decree. The promise declared on herein was made at or about this time, according to the plaintiff's contention. July 29, 1924, the plaintiff, without receiving any direct consideration therefor, as far as the record shows, executed to Michael a general release which referred in particular to any interest claimed by the former in the property in question. By deed dated August 7, 1924, and recorded the next day, the property was conveyed to a *bona fide* purchaser for $16,500, comprising cash and two mortgages, one a prior mortgage on which a balance of $4,500 was then due, and the other a purchase money mortgage of $7,500 to Michael's wife. The plaintiff testifies that about a week after the property was sold, he went to the defendant and asked for the $3,000 allegedly promised, but was put out of the store by the defendant, who refused to pay him. It also appears that Michael paid the defendant $2,000 not long after the sale of the property.

On August 9, 1924, a stipulation was made by attorneys representing the interested parties in the equity suit that it be entered "settled". This stipulation was not filed until January 8, 1925. Thereafter, on January 14, 1925, the plaintiff filed a motion that this settlement agreement

be vacated for lack of consideration, and by stipulation filed March 2, 1925, the equity suit was reinstated for hearing. The present case was begun by writ dated March 4, 1925.

The fourteenth exception is to the refusal of the trial justice to direct a verdict for the defendant. Several grounds are urged in support of this exception. We find no merit in the defendant's first contention that there is a variance between the plaintiff's declaration and the proof offered in support thereof. The declaration contains the common counts and a count setting out the alleged oral promise hereinbefore mentioned. In our opinion, the plaintiff's testimony substantially supports the allegations of this special count. The fact that the plaintiff, in a proof of claim filed herein following the default of the defendant in the early stages of the case, which default was later removed, described the alleged agreement in slightly different terms from that declared on, while perhaps a matter of argument to the jury, does not amount to a variance between pleading and proof such as would justify a directed verdict for the defendant at the conclusion of the testimony. On this issue, the trial justice was then concerned only in ascertaining whether the evidence presented on behalf of the plaintiff was in substantial agreement with his case as stated in his pleadings.

The defendant further contends that the evidence fails to reveal any valid or enforceable contract between the parties. On this point there can be no doubt that the agreement, as proved by the plaintiff, was based on sufficient consideration, the adequacy of which we are not concerned with. According to his testimony, the injunction which prevented the sale of the property in question was vacated, the equity suit itself filed by the plaintiff was settled, and the property sold, the plaintiff thereby suffering a detriment. This court has held that the release of an attachment was sufficient consideration for a promissory note, *Kendall* v. *Rossi*, 35 R. I. 451; that a promise,

which was carried out, to refrain from instituting lien proceedings was good consideration for a promise by the owner of the property to pay the prospective lienor wages then due him from another, *Bova* v. *Scorpio,* 43 R. I. 98; and the fact that a note creditor of a corporation, at the request of a third person, refrained from instituting bankruptcy proceedings against it and surrendered to it the notes, upon payment by it to him of one-half of the amount of the notes, was legal consideration for the third person's promise to the creditor to pay him the other half of that amount, even though the third person received no benefit in so doing and had no legal interest in the corporation at the time of the promise. *Whitaker* v. *Greene,* 103 A. (R. I.) 779.

The defendant's chief contention concerning the alleged contract is that it comes within the Statute of Frauds, and not being in writing, is, therefore, invalid. As the basis for such contention he maintains that the alleged agreement amounts to a promise by him to pay the debt of another, either generally or out of particular property of the debtor not deposited with him specifically for that purpose, or else that it constitutes an oral declaration of trust by him for the benefit of the plaintiff.

Upon consideration, we are of the opinion that these contentions of the defendant are not sound and are not warranted from a reasonable construction of the testimony. In passing upon the defendant's motion to direct a verdict in his favor, the trial justice was obliged to follow the well-established rule, that such a motion should not be granted if, on any reasonable view of the evidence, the plaintiff is entitled to recover. According to testimony submitted on behalf of the plaintiff, the alleged promise by the defendant was made under the following circumstances. In the latter part of July, 1924, following the issuing of the restraining order or injunction, the two brothers met with the defendant in his store, several others also being present. After reference by the defendant to the purchase

price of the property and the amount of the mortgages in connection with the contemplated sale, it was suggested by a friend of the plaintiff that the latter be given $5,000, in some form, out of the transaction. This proposition was not acceptable, and the friend then mentioned $3,500 as suitable. Thereupon, Michael offered the plaintiff $2,500 in cash. The plaintiff then stated in substance that he would not do business with his brother because the title to the property was in the defendant, whereupon the latter raised his hand and made the promise sued on herein. The defendant then told the plaintiff to release the injunction; the plaintiff promised and the parties separated. Michael was present but said nothing further when the defendant made the statement in question. In our judgment this evidence reveals an original undertaking on the part of the defendant, based on sufficient consideration, and somewhat analogous to the undertakings appearing in the cases of *Bova* v. *Scorpio, supra,* and *Whitaker* v. *Greene, supra,* and not a promise by him to pay the debt of another in any form. Under this view of the testimony, the plaintiff was not concerned with the source from which the defendant obtained the money to make the payment involved, and the question of the payment by the defendant of the debt of another out of certain property of the debtor is not raised, the reference by the defendant to the sale of the property merely serving to fix the time when the payment to the plaintiff was to take place.

We are also of the opinion that the evidence discloses no attempt by the defendant to make an oral declaration of trust in favor of the plaintiff. The fact that the defendant is alleged to have said to the plaintiff, "You trust me", when taken in connection with all the surrounding facts and circumstances then existing, and the rest of the statement said to have been made by the defendant, is insufficient to support his contention in this regard. The evidence submitted on behalf of the plaintiff, that at different times, prior to the sale, the defendant made statements in

substance that it was better that he hold the title to the property, that he would fix things and that when he sold he would take care of the plaintiff, is too general and indefinite to form the basis of an oral declaration of a trust in the plaintiff's favor. Moreover, the plaintiff is not claiming herein that any trust relationship existed between himself and the defendant, but is declaring on an express agreement, his portion of which he contends he has performed.

In our judgment, therefore, the trial justice ruled correctly that the alleged promise as declared on and testified to by the plaintiff was not, as a matter of law, invalid as being within the provisions of the Statute of Frauds of this State; that it was not error for him to deny the defendant's motion for a directed verdict and that he properly submitted to the jury the question of whether or not, on the conflicting testimony, the defendant did in fact make the promise as claimed by the plaintiff and denied by the defendant. The fourteenth exception is overruled.

The propriety of the action of the trial court in denying the defendant's motion for a new trial is raised by the fifteenth exception. While the plaintiff was only slightly corroborated, and the defendant was supported by several witnesses, the instant case is peculiarly one in which the opportunity of seeing and hearing the witnesses testify is of great assistance in passing upon their credibility and the weight to be given their testimony. This opportunity, which we do not have, was afforded the jury and the trial court, and they both have determined the issues of fact in favor of the plaintiff. In disposing of the motion for a new trial, the trial justice stated that he was not favorably impressed with the attitude and demeanor of the defendant while testifying. We have considered the evidence, which is conflicting, and do not find that the determination of the trial justice upon the weight of the evidence is clearly wrong. *Surmeian* v. *Simons*, 42 R. I. 334.

Several grounds of the defendant's motion for a new trial relate to alleged improper argument to the jury by the

plaintiff's attorney. The correct method of bringing such a situation to the attention of the trial court is set out in *Industrial Trust Co.* v. *Feuer,* 177 A. (R. I.) 351, and cases cited therein. This method was not followed by the defendant in the case at bar and, in our opinion, the question of whether or not the argument of the plaintiff's attorney to the jury was improper is not now before us. The cases of *Parker* v. *Providence Carriage Co.,* 20 R. I. 378, and *Benoit* v. *Perkins,* 79 N. H. 11, 104 A. 254, cited by the defendant, are not controlling. The first of these cases, decided prior to the passage of the Court and Practice Act (1905), which in part affected appellate procedure, dealt with the statement of an attorney made in the presence of the jury while he was examining a witness. The second case is from another jurisdiction, where improper argument to a jury is dealt with in a manner dissimilar to our settled practice.

In our judgment, the action of the trial justice in denying the defendant's motion for a new trial was not error, and the fifteenth exception is, therefore, overruled.

The remaining exceptions of the defendant are to rulings made during the trial by the justice presiding, in admitting certain evidence offered on behalf of the plaintiff, in refusing to strike out similar evidence already admitted and in refusing to allow the defendant's attorney to ask a certain question of a witness. Several of these exceptions raise the same issues which have been discussed herein in passing upon the defendant's fourteenth exception, and are governed by the overruling of that exception. The exceptions in question have all been examined and are found to be without merit, and hence are overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*Sarkis Tartarian, Walter J. Hennessy,* for plaintiff.

*Knauer & Fowler, Philip S. Knauer, Philip S. Knauer, Jr., Daniel H. Morrissey, Luigi De Pasquale,* for defendant.