**RICHMOND STEEL INC.,**
**Plaintiff, Appellant,**

v.

**PUERTO RICAN AMERICAN INSURANCE COMPANY,**
**Defendant, Appellee.**

**No. 90–1276.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1991.

Decided Jan. 17, 1992.

Charles A. Cordero with whom Cordero, Miranda & Pinto, Old San Juan, P.R., was on brief, for plaintiff, appellant.

Alfonso Miranda Cardenas with whom Miranda–Cardenas & Cordova, San Juan, P.R., was on brief, for defendant, appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and SKINNER,* District Judge.

BOWNES, Senior Circuit Judge.

Plaintiff-appellant, Richmond Steel, Inc. ("Richmond") appeals from a directed verdict in favor of defendant-appellee, Puerto Rico American Insurance Company ("PRAICO"). Richmond contends that the trial court made two errors: 1) striking the testimony of its expert witness; and 2) granting PRAICO's motion for directed verdict. We affirm.

## BACKGROUND

We summarize the facts of the case in the light most favorable to Richmond. *Cochrane v. Quattrocchi,* No. 91–1493, 949 F.2d 11, 12 n. 1 (1st Cir.1991). On November 20, 1985, Bird Construction Co. ("Bird") entered into a contract with the Municipali-

ty of Bayamon for the construction of the Bayamon Municipal Coliseum. Subsequently, Bird entered into a contract with Richmond for the furnishing, installation, and erection of the structural steel work to be done at the Bayamon Coliseum project. Pursuant to the terms of its contract with Richmond, Bird secured a builders risk insurance policy from PRAICO. Under the terms of PRAICO's policy, Richmond was additionally insured as Bird's subcontractor. The policy covered "against all risks of direct physical loss or damage to the property."

On April 27, 1987, part of the steel structure being erected at the Bayamon Coliseum project collapsed. PRAICO's claim adjuster, Benjamin Acosta & Associates ("Acosta") was at the accident site the next day. Richmond suspended shipment of the required steel that Bird needed to rebuild the structure until PRAICO confirmed, on July 28, 1987, that Richmond was covered under the insurance policy.

Richmond commenced this action in the District Court of Puerto Rico based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1991). Its original complaint stated a cause of action for breach of contract and collection of monies against Bird for work performed at the Bayamon Coliseum project. Bird filed a counterclaim for damages for delays in the completion of the project, alleging that Richmond was negligent. Richmond amended its complaint to include PRAICO, alleging that PRAICO was negligent in not timely admitting coverage under the insurance policy.

Prior to trial, Richmond and Bird settled their disputes. The court entered a partial judgment which subrogated Richmond to any rights, causes of action, or claims that Bird may have had against PRAICO stemming from the cause of action alleged in the complaint. Richmond continued its claim against PRAICO.

At the jury trial, Richmond introduced the testimony of Douglas Shannon, the claims manager for PRAICO, as a hostile witness and George Kirk Waldron, a for-

---

* Of the District of Massachusetts, sitting by desig-

nation.

mer officer of Richmond. To prove damages caused by PRAICO's delay in accepting coverage, Richmond presented Ricardo Ruiz, a certified public accountant with experience in construction accounting. The court struck Ruiz's testimony as to damages. PRAICO then moved for a directed verdict, which the court granted. The court held that: 1) Richmond failed to prove its damages; and 2) there was no evidence from which the jury could determine, by a preponderance of the evidence, that PRAICO was negligent. Richmond appealed.

### EXPERT TESTIMONY

■ Richmond contends that the court improperly struck Ruiz's testimony because any flaws in it went to the weight of the evidence and not to its admissibility. Richmond correctly states that we have upheld the admissibility of maladroit "expert" testimony on the ground that it was for the jury to determine the witness' credibility. *See, e.g., International Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.,* 851 F.2d 540 (1st Cir.1988); *Payton v. Abbott Labs,* 780 F.2d 147 (1st Cir.1985). Richmond, however, overlooks the starting premise behind our precedent which is that trial judges have broad discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses.

It is settled law in this circuit that "[w]hether a witness is qualified to express an expert opinion is a matter left to the sound discretion of the trial judge. In the absence of clear error, as a matter of law, the trial judge's decision will not be reversed."

*Payton v. Abbott Labs,* 780 F.2d at 155 (quoting *A. Belanger & Sons, Inc. v. United States,* 275 F.2d 372, 376 (1st Cir.1960)); *see also Nickerson v. G.D. Searle & Co.,*

900 F.2d 412, 419 (1st Cir.1990); *DaSilva v. American Brands, Inc.,* 845 F.2d 356, 361 (1st Cir.1988); *International Adhesive Coating Co.,* 851 F.2d at 544; *Lynch v. Merrell–National Lab.,* 830 F.2d 1190, 1196–97 (1st Cir.1987). Therefore, our standard of review in this case is limited. *International Adhesive Coating Co.,* 851 F.2d at 544.

The court found that Ruiz's testimony was unreliable under rule 702[1] of the Federal Rules of Evidence.

[E]ven though he's an expert, he is presenting evidence for the Jury to determine a fact which is in issue here, and his own testimony says that he audited this to determine whether the claims being made or the—Whether the items were the correct ones to be presented or not, but as to the figures and numbers, to me, his testimony is not reliable to determine a fact and issue as an expert witness because he himself said he didn't know. That same check that he brought forth, $190.00, he said there could have been other things being paid there and necessarily do not go there.

The court also struck Ruiz's testimony on the ground that it violated rule 1006.[2] To introduce evidence on Richmond's damages, Ruiz testified about his audit of Bird's expenditures during the interim period when Richmond had suspended its steel shipments. The court ruled that the underlying documents needed to be available before Ruiz could present a summary. But even if they were available, the court found that the supporting documents would be unreliable.

[I]f the underlying documents are such as the ones he brought here, they would also—it seemed to The Court they would tend to be unreliable in view of the incon-

---

1. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Fed.R.Evid. 702 (rev. ed. 1991).

2. The contents of voluminous writings, recordings, or photographs which cannot conve-

niently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.
Fed.R.Evid. 1006.

sistencies we saw between amounts being claimed there to figure the daily cost and, actually, the information contained in those documents. That's as to the negligence claimed.

Ruiz's testimony as to the damages sustained by Bird was based upon his review of documents [3] given to him by Bird. Ruiz claimed that he was able to ascertain that the documents were kept in the ordinary course of business because of his experience doing account auditing for construction companies. During cross-examination, Ruiz admitted that it had been ten years since he last dealt with a construction enterprise comparable in size, magnitude, and number of projects with those handled by Bird.

Based upon this record, we cannot say that Ruiz's qualifications and testimony as an expert witness were beyond judicial invalidation. We conclude that the court did not commit clear error in striking Ruiz's testimony.

## DIRECTED VERDICT

In reviewing a directed verdict, we examine the evidence and all fair inferences in the light most favorable to the plaintiff. *Cochrane v. Quattrocchi*, 949 F.2d at 12. The motion for directed verdict "is properly granted only when, as a matter of law, no conclusion but one can be drawn." *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 990 (1st Cir.1978); *see also Malave–Felix v. Volvo Car Corp.*, 946 F.2d 967, 970 (1st Cir.1991). We may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. *Lubanski v. Coleco Indus., Inc.*, 929 F.2d 42, 48 (1st Cir.1991). But there must be more than a mere scintilla of evidence to warrant submission of an issue to the jury. *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1088 (1st Cir.1989); *Trinidad v. Pan American World Airways, Inc.*, 575 F.2d 983, 985 (1st Cir.1978). The plaintiff may

not rely on conjecture or speculation, rather the evidence offered must make the "existence of the fact to be inferred more probable than its nonexistence." *Carlson v. American Safety Equip. Corp.*, 528 F.2d 384, 386 (1st Cir.1976); *see also Malave–Felix*, 946 F.2d at 971.

The court granted a directed verdict in favor of PRAICO. It ruled that:

> First of all, ... [i]n view of my ruling, ... to the effect that [Ruiz], although he's an expert in CPA, as to the fact in issue here of the amount of damages, his testimony is not reliable at all.... The claim made as to the negligence, I cannot say that a preponderance of the evidence would carry your day, counsel, even your own exhibits would tend to show that PRAICO, through Mr. Benjamin Acosta, was diligently pursuing the investigation into this claim.... From this evidence counsel, I cannot—and looking at it in the light most favorable to the party opposing, the Rule 50 BA, I cannot say that there is evidence from which a Jury can determine on the preponderance of the evidence, that PRAICO was negligent and or that it delayed the claim of Richmond Steel with the purpose of causing damages, and I cannot find here that PRAICO's liable to Richmond Steel for the delay, damages as a result of the collapse.

In a negligence case subject to Puerto Rico law, the burden rests with the plaintiff to prove, by a preponderance of the evidence, that the injury resulted from the defendant's negligence. Under the Puerto Rico insurance code, an insurance company has the duty to confirm or deny coverage of a claim within a reasonable term after the loss statement is completed. P.R. Laws Ann. tit. 26, § 2716a(5) (1976). The Code specifies the period of time constituting a "reasonable term."

> The investigation, adjustment and resolution of any claim shall be made in the shortest reasonable period of time within

---

**3.** The documents included: figures of the direct job cost; the daily cost because of the delay including the direct wages of the supervisor, the foremen, the clerks, crane operators, equipment operators, and other specialty operators; burden percentage-payroll taxes; employee benefits; equipment rental costs; and light, water, and telephone charges.

the first *forty-five (45) days* after all the documents needed to resolve said claim have been submitted to the insurer. The first period may only be extended under extraordinary circumstances, but such extension shall never exceed the term of *ninety (90) days* from the date the claim was submitted.

P.R. Laws Ann. tit. 26, § 2716b(1) (Supp. 1988) (emphasis added).

The accident occurred on April 27, 1987. The claims manager for PRAICO, Shannon, testified that PRAICO did not receive the necessary information as to whether Richmond was covered by any other policies until July 3, 1987. PRAICO informed Richmond that it was covered on July 28, 1987. Shannon's testimony shows that PRAICO confirmed Richmond's coverage *twenty-five days* from the time it had the documents needed to resolve Richmond's claim. Richmond did not refute Shannon's testimony nor did it proffer supporting evidence for its contention that PRAICO's actions breached the standards established by the insurance code.

There was no evidence from which a jury could reasonably find that PRAICO acted negligently. The court did not err in granting PRAICO's motion for directed verdict.

Affirmed.